Justice WAINWRIGHT,
concurring in part and dissenting in part.
Scott Van Dyke, president of Anglo-Dutch Petroleum International, Inc., and his attorney Gerald Swonke signed an engagement letter, dated October 16, 2000, in which attorney Swonke agreed to represent Van Dyke’s company, Anglo-Dutch, in litigation with Halliburton Energy Services, Inc. Swonke was “of counsel” at the law firm of Greenberg Peden P.C. Anglo-Dutch contends that under the terms of the letter, Swonke also bound Greenberg Peden to represent Anglo-Dutch in the Halliburton litigation. The letter contains Swonke’s references to expenses he would “personally incur”, fees that “I would be entitled to receive”, the agreement for “me” to assist you in the so-called Halliburton litigation, but it is drafted on Greenberg Peden letterhead. Swonke contends this was an oversight. Swonke testified that for a couple of years prior to the Halliburton litigation, he had individually represented Anglo-Dutch under his “of counsel” arrangement at Greenberg Peden. Notwithstanding this evidence, the Court disagrees with the trial court and concludes that the engagement letter is unambiguous and as a matter of law bound the Greenberg Peden firm to represent Anglo-Dutch. I therefore agree with JUSTICE LEHRMANN’S dissent that the engagement letter is ambiguous and with her other departures from the Court’s opinion. I write to explain another basis for my disagreement with the Court’s position.
*454 The Court holds the two parties to an agreement that neither of them entered in October 2000, as their trial testimony indicates. Van Dyke testified that he knew at the time of the engagement letter that Greenberg Peden would not represent Anglo-Dutch in any new matters, such as the Halliburton litigation. Why? Van Dyke explained. Anglo-Dutch was over $200,000 behind in paying Greenberg Pe-den, and Greenberg Peden was not interested in further exposure on contingency fee cases. The exchange on this point during Van Dyke’s testimony at trial is unequivocal, as Swonke told him in February 2000 that Greenberg Peden was not his law firm.
Attorney: Mr. Van Dyke, my question was a more limited one, and you can say, “No, he didn’t tell me that,” if you want.
I’m just asking: Did he [Swonke] not tell you from the beginning that Greenberg Peden wouldn’t represent you in any lawsuit here, no matter whether it was contingency or hourly at all until you — because you hadn’t paid off that debt.
Van Dyke: Yes.
Furthermore, Van Dyke knew that no Greenberg lawyers would work on his files from that time forward. Harlan Naylor, Greenberg’s managing partner, explained to the jury that the firm’s lawyers were instructed not to work for Anglo-Dutch— “neither the shareholders nor the associates were going to do any more work for Mr. Van Dyke on that case.” This testimony from Van Dyke and Naylor is undisputed. Swonke explained to the jury that Greenberg had essentially terminated Van Dyke as a client.
Greenberg Peden had told him in my presence they wouldn’t do any more work for him. I had been doing work for him individually in my own capacity for — I don’t know — two years, with Greenberg Peden not having involvement at all.
The uncontested testimony at trial establishes that Greenberg Peden’s name partner (David Peden) told Van Dyke before he signed the engagement letter that the Greenberg Peden firm would not represent Anglo-Dutch in any new matter, whether contingency or hourly, because it was delinquent in paying the firm over $200,000 in legal fees. Swonke was present at that meeting. Nevertheless, Anglo-Dutch contends that the engagement letter signed after the meeting bound Greenberg Peden to represent it in the Halliburton litigation. This is quite a turnabout for Anglo-Dutch as its litigation position contradicts the knowledge of its president, who signed the engagement letter. Knowing that Greenberg Peden refused to represent Anglo-Dutch in the Halliburton litigation, Van Dyke now asserts that the engagement letter unambiguously did just that.
The jury heard all about the dispute from all four sides — Swonke, Van Dyke, Greenberg Peden and another law firm Anglo-Dutch engaged (McConn & Williams) — and found that the two signers of the engagement letter intended that Swonke, not Greenberg Peden, would represent Anglo-Dutch.
I agree with the Court that attorneys owe fiduciary duties to their clients in this context that include: exercising the utmost good faith and most scrupulous honesty toward clients; ensuring that engagement letters are clear to the clients; fully and fairly disclosing all important information to clients concerning the transactions; and explaining material changes in the arrangement, such as moving from one law firm to another. Ambiguity in the fee agreement should be construed against the lawyer-drafter of the agreement. The *455 Court and amici set these duties out in some detail.[1] I do not conclude, however, that application of these duties to this case means that an ambiguous contract should be designated clear and then enforced to a result that neither signer intended at the time he signed it. At base, our task here is to enforce the parties’ agreement. The duties and presumptions of counsel in such cases should help determine what the contractual obligations are, not override the agreement they entered.
I therefore agree with the arguments in Justice Lehrmann’s dissent. However, because I agree that the judgment should remand the case to the trial court, I concur in the Court’s judgment, while respectfully dissenting from its reasoning. Unlike the Court, I would remand for a new trial and instruct the jury to be guided by the lawyer’s fiduciary duties in interpreting the ambiguous engagement letter.

. See Brief of Amicus Curiae Linda S. Eads, Associate Professor of Law, Dedman School of Law, Southern Methodist University, in Support of Petitioner at 21. See Brief of Amici Curiae Abrams Scott & Bickley, L.L.P., Arnold & Itkin LLP, Caddell & Chapman, Cornell, Smith & Mierl, LLP, Dawson, Sodd, Ellis & Hodge LLP, Law Office of James M. McCormack, and Quilling, Selander, Cummis-key & Lownds, P.C., in Support of Petitioner. The law firm amici state that they "are not suggesting that lawyers and law firms should always lose a fee dispute.” Id. at 8.